UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ADVENTIST HEALTH SYSTEM CORPORATION d/b/a Adventist Midwest Health, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 06 C 6477 |
| AMERICAN MEDICAL SECURITY LIFE INSURANCE COMPANY, INC., sued in this litigation as American Medical Security Group, Inc., | ) ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on Plaintiff Adventist Health System ("Adventist") and Defendant American Medical Security Group, Inc. ("AMS")'s cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56(c). For the reasons set forth below, Adventist's motion is denied and AMS's motion is granted.

**BACKGROUND**

Adventist is a not-for-profit corporation that is domiciled in Florida. Adventist operates three hospitals (LaGrange Memorial Hospital, Hinsdale Hospital, and GlenOaks Hospital) located in the western suburbs of Chicago ("Adventist's

Hospitals"). In 2005, 31 patients ("Insureds") assigned their individual insurance benefits to Adventist prior to receiving treatment at Adventist's Hospitals. AMS, a Wisconsin corporation, acted as the third-party health insurance administrator for the Insureds.

The Insureds' insurance contracts with AMS ("Insurance Contracts") contained specific definitions for the terms "covered expense" and "maximum allowable charge" that effectively limited the potential amount Insureds could collect from AMS on any of their future insurance claims. Each of the Insurance Contracts contained one of the following definitions of "covered expense" and "maximum allowable charge"[1]:

> **COVERED EXPENSE** means an expense, fee or charge incurred by or on behalf of an Insured Person...for which the Insured Person is obligated to pay...[and which] will not exceed the Maximum Allowable Charge...and does not exceed the maximum amount payable.
>
> **Covered Expense** means a Medical Service that is:
>  1. Incurred while You...are insured by the Plan;
>  2. prescribed, ordered, recommended or approved by an authorized Health Care Provider;
>  3. Medically Necessary;
>  4. not subject to an applicable limitation or exclusion; and
>  5. Allowed under all other applicable terms and conditions of the Certificate, or in a rider that is attached to the Certificate.

---

[1] Because these definitions are consistent with each other, we have listed them consecutively.

We will not pay for that part of a Covered Expense which:
1. is subject to a co-payment, deductible, coinsurance; or
2. exceeds an applicable benefit maximum.

**MAXIMUM ALLOWABLE CHARGE** The maximum allowable charge for medical...benefits if included is the portion of any charge for services...which does not exceed an amount determined by us. You may be liable to pay the difference between the actual billed amount and the maximum allowable charge...

**Maximum Allowable Charge** means the maximum benefit amount we will pay for each covered expense. This amount is based on our predetermined methodology which is either:
1. [A] calculation based upon an independently published database; or
2. An amount based on the following:
   a. the type of Medical Service;
   b. the geographic area where the medical service is provided; and
   c. other applicable related factors.

The methodology may be updated by us on a periodic basis as we deem appropriate. You...may be responsible to pay the difference between:
1. the billed amount; and
2. the maximum allowable charge that we will provide benefits for.

**Maximum Allowable Charge** means the lesser of the actual charge or a charge made for covered services...that [does] not exceed the reasonable and customary charge for the area where the charge is incurred. From time to time, we will change the schedule that we use to determine the reasonable and customary charge. Such change will be made at our discretion. When we review each claim for benefits for the reasonable and customary charge, we will also consider the nature and severity of the condition being treated.

> Our determination of the reasonable and customary charge is developed from a statistically valid sample which:
> 1. equitably recognizes geographic variations
> 2. is updated at least every six months; and
> 3. is collected on the basis of the most current codes developed and maintained by recognized authorities.
>
> **Maximum Allowable Charge** the Maximum Allowable Charge for medical...benefits, if included, is the portions of any charge for services...which does not exceed an amount determined by the Plan Supervisor on the Plan's behalf.

After the Insureds were treated, Adventist filed 32 claims to AMS for payment. AMS paid Adventist an amount less than the amount Adventist billed for its services. After receiving payment from AMS, Adventist requested a review of benefits for each claim. Upon reviewing the claims, AMS determined that in all but one claim, for which it provided further partial payment, the amounts paid were the correct "maximum allowable charge" under the Insurance Contracts. The aggregate difference between the amount Adventist charged and the amount AMS paid for all the claims totaled $103,710.80.

Adventist filed this diversity action against AMS on November 28, 2006, asserting breach of contract and seeking recovery for the unpaid balance of the claims. Both parties have moved for summary judgment.

## LEGAL STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if the evidence is such that a "reasonable jury could return a verdict for the nonmoving party," and a material fact is one which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so then the party opposing the motion must respond with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 325 (1986). In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson*, 477 U.S. at 255.

With these principles in mind, we will consider the instant motion.

## DISCUSSION

This action requires us to interpret the Insurance Contracts. It is appropriate for a court to consider the construction of an insurance policy on summary judgment. *Nicor, Inc. v. Associated Elec. and Gas Ins. Services Ltd.*, 223 Ill.2d 407, 416 (2006). In a diversity case the federal court applies the choice of law rules of the forum state. *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704-5 (7th Cir. 2004). Illinois follows

the most significant relationship test in deciding applicable substantive law. *Esser v. McIntyre*, 661 N.E.2d 1138, 1141 (Ill. 1996). When applying this test, the court considers (1) the place of injury; (2) where the injurious conduct occurred; (3) the parties' domicile; and (4) where the relationship of the parties is centered. *Id.*

Here, the dispute involves Adventist's Hospitals Insureds who were Illinois residents and who received services in Illinois, and policies that were performed in Illinois. These factors demonstrate that Illinois has the most significant relationship with the instant matter. Accordingly, we will look to Illinois law in our construction of the Insurance Contracts at issue.

A. Breach of Contract

Under Illinois law, "an insurance policy...is governed by contract law." *Mammina v. Homeland Insurance Co.,* 37 Ill. 555, 558 (1987). In order to properly allege a breach of contract action in Illinois, a plaintiff must plead the following essential elements: (1) the existence of a valid and enforceable contract, (2) the defendant's breach of the contract, (3) plaintiff's performance, and (4) plaintiff's injury. *Allstate Ins. Co. v. Winnebago County Fair Ass'n, Inc.*, 475 N.E.2d 230, 233 (Ill. App. Ct. 1985). The parties' dispute revolves around the second essential element; AMS's alleged breach of the Insurance Contracts.

As the assignee of Insureds' insurance policies with AMS, Adventist argues that AMS breached the Insurance Contracts by refusing to pay Adventist the amount

it billed Insureds. According to Adventist, AMS should be required to pay the full amount Insureds were billed because that amount is both customary and usual for the services rendered. Adventist cites *Sherman Hospital v. Wingren*, 523 N.E.2d 220 (Ill. App. Ct. 1988), in support of this position. However, a review of *Sherman Hospital* demonstrates that it is factually distinguishable from the present case.

In *Sherman Hospital*, a hospital sought recovery for unpaid services from an individual who had separately settled a worker's compensation claim that included an agreement to pay the hospital bill. 523 N.E.2d at 221. The hospital was able to recover under implied contract theory by demonstrating that its charges were usual and customary for itself and other area hospitals. *Id*. at 222.

Alternatively, in the instant case, AMS's refusal to pay Insureds' bills in full derives from the express terms of the Insurance Contracts. As previously mentioned, the Insurance Contracts limited the amount AMS had to pay Insureds by requiring such amount to first qualify as a "covered expense." As long as the bill constituted a "covered expense," AMS was obligated to pay the Insured an amount that did not exceed the "maximum allowable charge" under the contract. AMS presented the affidavit of Sue O'Connor ("O'Connor"), the Claims Department Supervisor, to confirm that AMS paid the maximum allowable amount for each of the insurance claims at issue. However, Adventist argues that we should not consider O'Connor's affidavit because it was not based on personal knowledge.

While it is true that the court need only consider affidavits based on personal knowledge, we may rely on the contents of an affidavit to determine whether the affiant had personal knowledge for the matters upon which her affidavit was based. *Miller v. NBD Bank, N.A.*, 701 N.E.2d 282, 286 (Ind. App. Ct. 1998). In her affidavit, O'Connor states that she had personal knowledge regarding the facts relevant to this litigation and that she reviewed the company's records for each of the claims listed in the complaint. Adventist has not presented us with any evidence to discredit O'Connor's statements in her affidavit. Accordingly, we find that O'Connor's affidavit was based on personal knowledge and we will consider it proof in support of AMS's position that it paid out the "maximum reasonable charge" towards Insureds' bills with Adventist.

Despite its original assertion that no genuine issue of material fact existed, Adventist now contends that a genuine issue of material fact exists because AMS had unfettered discretion to calculate the "maximum allowable charge" it would pay Insureds for their insurance claims. We disagree.

AMS explained in its responses to Adventist's claim appeals that it based the "maximum allowable charge" on the Centers for Medicaid Services Ambulatory Payment Classification repricing methodology, the Outpatient Surgical Facility Charge Index, and the Diagnosis-Related group repricing methodology. AMS further indicated that these methodologies were based on clinically similar groupings

adjusted by geographical region. Basing its "maximum allowable charge" on recognized methodological standards does not demonstrate that AMS had unfettered discretion under the Insurance Contracts to determine the "maximum allowable charge" it would pay Insureds. Instead, the Insurance Contracts support AMS's view that it was only required to pay Insureds (and Adventist by assignment) the "maximum allowable charge" towards their bills with Adventist. Having already determined that AMS paid the "maximum allowable charge" towards Insureds' bills with Adventist, we find that AMS met its contractual obligations with Insureds and did not breach the Insurance Contracts.

## CONCLUSION

Based on the foregoing analysis, Adventist's motion for summary judgment is denied, and AMS's motion for summary judgment is granted.

Charles P. Kocoras
United States District Judge

Dated:  March 20, 2008